IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CLARENCE ELDON CHARLTON, | ) |
| | ) |
| Petitioner | ) |
| | ) |
| vs. | ) Case No. CIV-06-486-M |
| | ) |
| ERIC FRANKLIN, Warden, | ) |
| | ) |
| Respondent | ) |

**REPORT AND RECOMMENDATION**

Petitioner, a state prisoner appearing through counsel, brings this action pursuant to 28 U.S.C. § 2254 seeking a writ of habeas corpus. A response to the petition has been filed, and Petitioner has filed a reply. Thus, the case is at issue. Pursuant to an order entered by United States District Judge Vicki Miles-LaGrange, the matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the reasons set forth herein, it is recommended that the petition be denied.

By this action, Petitioner challenges his convictions following a jury trial on: Count I, assault and battery with a dangerous weapon; Count II, assault and battery, domestic abuse; Count III, kidnapping; Count IV, assault and battery with a dangerous weapon; and Count V, assault with a dangerous weapon, all, but the domestic abuse count, after former conviction of two or more felonies. Case No. CF-2002-1166, District Court of Oklahoma County. Petitioner was sentenced to forty-five years imprisonment on Count I to run concurrently with a one year sentence on Count II, and consecutively with a term of twenty years imprisonment on Count III, thirty years imprisonment on Count IV, and twenty-five years imprisonment on Count V, all to run consecutively with

one another. Petitioner filed a direct appeal, and the Oklahoma Court of Criminal Appeals affirmed his convictions on February 2, 2005. <u>Charlton v. State</u>, No. F-2003-1098 (Okla. Crim. App. Feb. 2, 2005) (Attached to the Petition). Thereafter, Petitioner filed an application for state post-conviction relief seeking transcripts at no expense, but not raising any substantive claims. Petition, p. 3. <u>See</u> also Application for Post-Conviction Relief (attached to the Petition). The application was denied on January 26, 2006. <u>See</u> Order Denying Application for Post-Conviction Relief, Case No. CF-2002-1166 (Attached to the Petition). Petitioner did not appeal. Petition, p. 3.

**I. BACKGROUND**

In February 2002, Petitioner's common law wife, Sandra Carter, decided to leave Petitioner because they were always fighting. Tr. Vol. II, p. 161. Ms. Carter rented an apartment in the same complex as the apartment she had been sharing with the Petitioner and their two-year old son. Tr. Vol, II, p. 161. Ms. Carter's seven-year old daughter also lived with the couple. Tr. Vol. II, p. 150, 157. On February 25, 2002, after spending the night with her children in her new apartment, Ms. Carter visited a lawyer's office to discuss her desire for sole custody of her son. Tr. Vol. II, p. 162. Petitioner, driving his brother-in-law's car, had been following Ms. Carter. Tr. Vol. II, p. 163.

After the appointment Ms. Carter returned to the couple's shared apartment to use the telephone. Tr. Vol. II, p. 164-65. Shortly thereafter Petitioner appeared with Ms. Carter's daughter, who he had picked up from school. Tr. Vol. II, p. 166. Petitioner asked Ms. Carter where she had been, and when she informed him that she had seen an attorney, Petitioner started hitting her with his fists. Tr. Vol. II, p. 167-68. After hitting

her several times Petitioner allowed Ms. Carter to go to the bathroom to clean off the blood. Tr. Vol, II, p. 168-70.  While she was in the bathroom Petitioner ripped the telephone cord from the wall. Tr. Vol. II, p. 171.  Petitioner approached Ms. Carter from behind and attempted to wrap the cord around her throat, but she was able to stop him. Tr. Vol. II, p. 175-76.  Petitioner then pulled out a box knife and began pointing it at Ms. Carter, placing the open blade against her throat and threatening to cut her throat.  Tr. Vol. II, p. 175.  Petitioner told Ms. Carter to clean up because they were leaving the apartment. Tr. Vol. II, p. 172.  Petitioner forced her to accompany him to apartment 123, the apartment that Ms. Carter had rented in her name.  Vol. II, p. 173.

Once at apartment 123 Petitioner took Ms. Carter into the bedroom, leaving her daughter and their son in the living room.  Tr. Vol. II, p. 174-76.  Petitioner and Ms. Carter began fighting again, and the Petitioner forced Ms. Carter and the children to accompany him in returning the car to his brother-in-law, James Cagle.  Tr. Vol. II, p. 176-77. Ms. Carter did not want to go, but Petitioner told her she had no choice.  Tr. Vol. II, p. 177-78.

Petitioner drove to the store where Mr. Cagle worked.  Tr. Vol. II, p. 179.  While en route Petitioner threatened to kill Ms. Carter and the children. Tr. Vol. II, p. 187.  The couple picked Mr. Cagle up, and they all returned to the apartment, at which time Mr. Cagle left them and drove his car back to work.  Tr. Vol. II, p. 181.  Petitioner and Ms. Carter continued to argue in apartment 123, and Petitioner told Ms. Carter's daughter to babysit her brother while he and Ms. Carter were in the bedroom.  Tr. Vol. II, p. 181-82. The couple began arguing again and Petitioner placed a belt around her neck and pulled

it tight until Ms. Carter lost consciousness. Tr. Vol. II, p. 183-84. Petitioner began patting Ms. Carter's face and calling her name to revive her. Tr. Vol. II, p. 185. The belt left marks on Ms. Carter's neck that Petitioner attempted to cover with hickeys, until Ms. Carter realized what he was doing and pushed him away. Tr. Vol. II, p. 186-87. The Petitioner told Ms. Carter that he was leaving for Kentucky but that he needed money. Tr. Vol. II, p. 188-89. Ms. Carter agreed to give Petitioner money in order to get him to leave. Tr. Vol. II, p. 190-91. Petitioner and Ms. Carter left the children with James Cagle, who had reappeared at apartment 123, and went to retrieve her paycheck. Tr. Vol. II, p. 192-93. Ms. Carter cashed her check and gave Petitioner $70.00, and they returned to apartment 123. Tr. Vol. II, p. 193-94. Petitioner left with Mr. Cagle. Tr. Vol. II, p. 194. Based on these facts Petitioner was convicted on the five above-referenced counts.

**II. STANDARD GOVERNING APPLICATIONS FOR A WRIT OF HABEAS CORPUS**

For factual and legal issues that have already been adjudicated in state court, the Court may only grant a writ of habeas corpus if that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1) and (2).

A state court's determination is contrary to clearly established federal law where it applies a rule that contradicts the law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405-06

(2000). A state court's determination involves an unreasonable application of clearly established Supreme Court precedent if it identifies the correct governing legal principle from the Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Id. at 413; see also Wiggins v. Smith, 539 U.S. 510, 520 (2003). It is not enough that the state court applied clearly established federal law erroneously or incorrectly; the application must also be unreasonable. Williams, 529 U.S. at 410-11; Valdez v. Bravo, 373 F.3d 1093, 1096 (10th Cir.), cert. denied, 543 U.S. 1008 (2004).

### III. DISCUSSION

Petitioner raises six grounds for relief. In Ground One, he argues that the trial court erred in admitting testimony of other crimes in violation of Okla. Stat. tit. 12 § 2404(b). Petitioner's Brief in Support, p. 7-11. In Ground Two, Petitioner argues that the trial court erred in permitting the introduction of his confession without conducting a hearing pursuant to Jackson v. Denno, 378 U.S. 368 (1964), and in failing to sua sponte instruct the jury on the issue of the voluntariness of his confession. Petitioner's Brief in Support, p. 11-18. In Ground Three, Petitioner argues that he is entitled to habeas corpus relief as a result of prosecutorial misconduct. Petitioner's Brief in Support, p. 18-21. In Ground Four, Petitioner argues that his sentences are excessive. Petitioner's Brief in Support, p. 22-23. In Ground Five, Petitioner argues that the trial court erred in failing to exercise its discretion and run his sentences concurrently. Petitioner's Opening Brief, p. 23-27. Finally, in Ground Six, Petitioner argues that cumulative error entitles him to habeas corpus relief. Petitioner's Brief in Support, p. 27.

### A. GROUND ONE

In Ground One, Petitioner argues, as he did on direct appeal, that the trial court erred in admitting the evidence of prior criminal acts. Petitioner's trial counsel objected when the State gave notice that it intended to proffer evidence of prior crimes as required by Burks v. State, 594 P.2d 771, 774-75 (Okla. Crim. App. 1979), overruled in part on other grounds by Jones v. State, 772 P.2d 922, 925 (Okla. Crim. App. 1989). The trial court conducted a hearing on the State's intention to offer the testimony of Regina Beyl, a former friend of Petitioner's who would testify about an alleged assault, and Michael Kauble, Petitioner's former brother-in-law, who would testify about having been assaulted by Petitioner. Petitioner's motion in limine to exclude the evidence was denied following a hearing on July 8, 2003. See Transcript of Motion Hearing Had on July 8, 2003, p. 6-7. Counsel re-urged his objection immediately prior to trial, and the Court deemed the evidence admissible under Oklahoma law. Tr. Vol. I, p. 4-11. On direct appeal, the Oklahoma Court of Criminal Appeals found as follows:

> As to Proposition 1, we find the evidence of [Petitioner's] prior assaults, arising from disputes in his prior domestic relationships, was relevant to counter claims that the instant assaults were accidental in nature. 12 O.S. 2001, § 2404(B); Gideon v. State, 1986 OK CR 112, ¶ 9, 721 P.2d 1336, 1338.

Summary Opinion, p. 2. In the instant petition, as on direct appeal, Petitioner's only argument regarding the United States Constitution is his concluding paragraph where he argues, without citation to any case law, that "it is clear that the improper admission of testimony regarding previous incidents of assault and battery deprived Petitioner of a fair trial, and due process of law." Brief in Support of Petition, p. 11. Other than this

6

paragraph Petitioner argues that that the admission of the evidence violated Oklahoma law.

At the outset it should be noted that when no particular constitutional guarantees are implicated, evidentiary objections raise questions merely of state law and, therefore, are cognizable in a federal habeas action only if the alleged error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process. Revilla v. Gibson, 283 F.3d 1203, 1212 (10th Cir. 2002). A federal court "will not disturb a state court's admission of evidence of prior crimes, wrongs or acts unless the probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denies defendant due process of law." Scrivner v. Tansy, 68 F.3d 1234, 1240 (10th Cir. 1995); accord Duvall v. Reynolds, 139 F.3d 768, 788 (10th Cir. 1998) (finding that admission of prior acts testimony, even if constitutionally erroneous, would be harmless because any such error did not have a substantial and injurious effect on the jury's verdict). In other words, federal habeas relief does not lie for errors of state law absent a determination that the state court's finding was so arbitrary and capricious as to constitute an independent due process violation. Fields v. Gibson, 277 F.3d 1203, 1220 (10th Cir. 2002) (citing Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). Thus, Petitioner's burden is a heavy one; he must show that the state's failure to follow its own law is arbitrary in the constitutional sense, that is, it must shock the judicial conscience. Aycox v. Lytle, 196 F.3d 1174, 1180 (10th Cir.1999). Petitioner does not point to any basis for concluding that the admission of the testimony of Regina Beyl

and Michael Kauble was arbitrary and capricious so as to violate Petitioner's due process rights.

Michael Kauble, Petitioner's former brother-in-law, testified that he was assaulted by Petitioner in 1999, and that Petitioner tried to choke him, when Mr. Kauble asked a question of his sister during a dispute she was having with Petitioner regarding their children. Tr. Vol. II, p. 51-52, 55-58. According to the trial judge the testimony was admissible to establish motive, intent or common scheme by Petitioner.[1] The evidence was permissible in this case in light of the Petitioner's defense that his choking of Ms. Carter was the result of a consensual sexual act versus the State's theory that he was trying to keep her from leaving him and taking their child. In light of the trial judge's limiting instruction and the permissible nature of the testimony, the undersigned concludes that Petitioner has not established that Mr. Kauble's testimony rendered his trial fundamentally unfair so as to deprive him of due process.

Regina Beyl, an acquaintance, also testified at Petitioner's trial. Although her testimony was not prefaced with a limiting instruction, her testimony was completely innocuous and the undersigned is unable to conclude that her testimony would have factored into the jury's determination that Petitioner was guilty. Ms. Beyl testified that she is a friend of the Petitioner, that she was subpoenaed by the State to testify, a choice

---

[1]Just prior to Michael Kauble's testimony the trial judge instructed the jury as follows:
[T]his witness I anticipate is going to offer evidence that the defendant allegedly committed misconduct or offenses other than those charged in the Information. You may not consider this evidence as proof of guilt or innocence of the defendant of the specific offenses charged in the Information. This evidence will be received solely on the issue of the defendant's alleged motive, intent, or common scheme. This evidence is to be considered by you only for the limited purpose for which it is offered.
Tr. Vol. II, p. 50. Additionally, the instructions to the jury following the presentation of the evidence included a similar instruction. Jury Instruction No. 11, Original Record, p. 410.

she would not have made. Tr. Vol. II, p. 66-67. Ms. Beyl testified that her nose was broken by Petitioner on November 5, 1999, after she attempted to intervene in an altercation between Petitioner and her sister. Tr. Vol. II, p. 69-70. Ms. Beyl further testified that in the clarity of hindsight she believed that what she witnessed on that night was not Petitioner assaulting her sister, but rather that he was merely attempting to move her out of the way so that he could enter the home and retrieve his belongings. Tr. Vol. II, p. 72, 79. Ms. Beyl testified that Petitioner broke her nose in response to her initial physical attack, acting out of self defense. Tr. Vol. II, p. 73-74, 76. In light of the nature of Ms. Beyl's testimony the undersigned concludes that the admission of her testimony did not render the outcome of Petitioner's trial fundamentally unfair. Ms. Beyl's testimony did not support the prosecution's theory totally, and it was clear from her testimony that she did not believe that she had been assaulted by the Petitioner on November 5, 1999. As such, Petitioner cannot prevail on his due process argument. Accordingly, the undersigned recommends that the petition be denied with regard to Ground One.

**B.  GROUND TWO**

In Ground Two, Petitioner argues that his confession was improperly admitted because the trial court failed to conduct a hearing pursuant to <u>Jackson v. Denno</u>, 378 U.S. 368 (1964), to determine the voluntariness of his confession. Sergeant Gamille Shockley of the Oklahoma City Police Department testified at Petitioner's trial about a conversation initiated by Petitioner at the police department.

> He told me he had gotten into an argument or fight with his girlfriend and that he had put a belt around her neck and choked her while she held a knife to his neck.

Tr. Vol. III, p. 100.  On cross-examination at trial, Petitioner denied that the conversation had taken place or that he had ever admitted to choking Ms. Carter.[2]  On direct appeal the Oklahoma Court of Criminal Appeals concluded that Petitioner had not challenged the voluntariness of his statement before the trial court and because Petitioner failed to demonstrate that the statement was involuntary, the failure to hold a hearing or to instruct the jury on the voluntariness of the statement was not grounds for relief. Summary Opinion, p. 2-3.

A defendant is "deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, and even though there is ample evidence aside from the confession to support the conviction." Jackson v. Denno, 378 U.S. 368, 376 (1964)(citation omitted). In Jackson, the Supreme Court held that a defendant who objects to the admission of a

---

[2]Q: Okay.  My question to you is, you heard Officer Shockley testify that you said to her, "I choked my girlfriend with a belt after she held a knife to my throat?"
A: Yes, I heard her say that.
Q: And you're telling this jury that Officer Shockley lied?
A: I'm saying that she might have misunderstood what was said that day, yes. . . .
Q: Okay.  Are you saying she made up the word "choke" or she made up the word "belt?"
A: I'm saying that we was standing there at the deal, and the officer come and pulled a belt out of my possession, and he had mentioned something to her and -- that it was a choking incident, that's why they needed the belt for evidence.
Q: And so you think she must misunderstood that that was somebody else talking, not you?
A: That's not -- I'm not saying that she misunderstood it or not.  What I'm saying is that this officer had mentioned that they needed a belt for evidence, and she asked -- on a choking incident, and she asked me if I did that, and I said that this girl had had a knife to my throat.
Q: Okay.
A: I didn't say nothing about choking no body.

Tr. Vol. III, p. 191-92.

confession on voluntariness grounds has a constitutional right to a fair hearing and an independent and reliable determination of voluntariness before the confession is allowed to be heard by the jury. Id. at 376-77.

> The usual remedy for failing to hold a hearing consistent with the requirements of Jackson v. Denno is to remand to the trial court for a new hearing on the issue of voluntariness. . . . A habeas petitioner is not, however, automatically entitled to a new hearing "merely because he can point to shortcomings in the procedures used to decide the issue of voluntariness in the state courts." Procunier v. Atchley, 400 U.S. 446, 451, 91 S.Ct. 485, 488, 27 L.Ed.2d 524 (1971). Instead, to be entitled to a new hearing on the voluntariness issue, petitioner "must also show his version of events, if true, would require the conclusion that his confession was involuntary." Id.

Lucero v. Kerby, 133 F.3d 1299, 1310-11 (10th Cir.1998).

Prior to trial Petitioner's counsel filed a seventh motion in limine seeking to preclude the prosecution from offering evidence of any conversation between Petitioner and Officer Shockley. The basis of the motion, however, was not voluntariness. Rather, Petitioner objected to use of any such testimony on the basis of hearsay. Defendant's Seventh Motion in Limine, Original Record, p. 239-42. When the trial court conducted a hearing on the motion in limine, the Court deferred a ruling, stating that a Jackson hearing would be conducted during the course of trial, prior to the testimony being introduced. Transcript of Motion Hearing, July 8, 2003, p. 14-15. However, when Officer Shockley took the stand to testify, Petitioner did not object and did not raise a voluntariness objection; counsel made no contemporaneous objection. Accordingly, the Oklahoma Court of Criminal Appeals' determination that Petitioner was not entitled to a Jackson hearing was not contrary to or an unreasonable application of clearly established federal law.

Furthermore, even assuming that Petitioner's version of events is true, the undersigned cannot conclude that his confession was involuntary, because he contends he did not confess. Petitioner contends that Officer Shockley was confused in some manner or that she mistook the statement made by his booking officer about the choking as having been made by Petitioner. Furthermore, Petitioner has not alleged any additional facts which, if proven true, would require the conclusion that his statements were made involuntarily. Accordingly, even accepting Petitioner's facts as true, there was no confession much less an involuntary one. Therefore, Petitioner was not prejudiced by the absence of a Jackson hearing, and he is not entitled to habeas corpus relief on this claim.

Finally, "any erroneous admission of an involuntary confession is subject to harmless-error analysis." Humphreys v. Gibson, 261 F.3d 1016, 1025 (10th Cir. 2001) (citing Arizona v. Fulminante, 499 U.S. 279, 295 (1991); Castro v. Ward, 138 F.3d 810, 823 (10th Cir.1998). The Court must determine whether admitting the custodial statement had a substantial and injurious effect or influence on the jury's verdict. Humphreys, 261 F.3d at 1025. In doing so, the Court "reviews the remainder of the evidence against the defendant to determine whether the admission of the confession was harmless." Id. (quotation omitted). In this case, in light of the evidence against the Petitioner, especially the reluctant testimony of the victim, the single statement that the Petitioner allegedly uttered to Officer Shockley would not have had a substantial and injurious impact on the jury. Therefore, even assuming the trial court erred in admitting the Petitioner's custodial statement, the error was harmless. Petitioner therefore, is not

12

entitled to habeas relief based upon the trial court's admitting this custodial statement without first conducting a <u>Jackson</u> hearing.

As part of this argument, Petitioner asserts that he was prejudiced by the trial court's failure to sua sponte instruct the jury on voluntary confessions. A petitioner seeking collaterally to attack a state court conviction based on an erroneous set of jury instructions "bears a heavy burden of proof." <u>Shafer v. Stratton</u>, 906 F.2d 506, 508 (10th Cir. 1990). "Habeas proceedings may not be used to set aside a state conviction on the basis of erroneous jury instructions unless the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in the constitutional sense," <u>Shafer</u>, 906 F.2d at 508 (quotation omitted), or "so infected the entire trial that the resulting conviction violates due process," <u>Estelle v. McGuire</u>, 502 U.S. 62, 72 (1991) (quoting <u>Cupp v. Naughten</u>, 414 U.S. 141, 147 (1973)). Moreover, the burden on a petitioner attacking a state court judgment based on a failure to give a requested jury instruction is especially great because "'[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of law.'" <u>Tyler v. Nelson</u>, 163 F.3d 1222, 1227 (10th Cir. 1999) (quoting <u>Maes v. Thomas</u>, 46 F. 3d 979, 984 (10th Cir. 1995)) (additional citations omitted). As noted above, Petitioner has not alleged any facts that would raise an issue as to the voluntariness of his statement to Officer Shockley. As such, the trial court's failure to sua sponte instruct the jury on the voluntary nature of his statement did not render his trial fundamentally unfair. Accordingly, the undersigned recommends that habeas corpus relief be denied with regard to Ground Two.

### C. GROUND THREE

In Ground Three, Petitioner argues prosecutorial misconduct. On direct appeal the Oklahoma Court of Criminal Appeals held that "the prosecutor's request that the jury hold [Petitioner] accountable for his conduct was based on a fair assessment of the evidence from the State's standpoint and was not error." Summary Opinion, p. 3 (citations omitted).

Petitioner specifically objects to the prosecutor's statements during closing arguments:

> Sandra Carter may not be as strong as you are. And you know Sandra Carter has that (sic) you don't have? She's got a baby with this man. She's just trying to do the best she can. See, that's why you don't have to understand the victim's perspective, because you don't have the same emotional tie to him as she does. That's why, like it or not, you're here and you're under oath to hold him accountable. . . .
> She told you, she loved him and she wanted to have a home -- a father for her son. Yeah, that's ridiculous. Why would you want your son to be in a home with an abuser? But she loved him. And that's her definition. And you don't have to understand it. What your job is is to hold him accountable for it.

Tr. Vol. IV, p. 73-74. Petitioner contends that these comments were clearly prejudicial and were an attempt by the prosecutor to present a distorted definition to the jury in its role as trier of fact. Petitioner argues that the prosecutor "clearly implied that the jury was obligated to find [Petitioner] guilty and to punish him." Petitioner's Brief in Support, p. 19.

The Tenth Circuit has held that unless the comments of a prosecutor violate a specific constitutional right, the test for determining whether or not prosecutorial comments violate due process is that set forth by the Supreme Court in <u>Donnelly v.</u>

DeChristoforo, 416 U.S. 637 (1974); Brecheen v. Reynolds, 41 F.3d 1343, 1355 (10th Cir. 1994); Mahorney v. Wallman, 917 F.2d 469, 472 (10th Cir. 1990). In Donnelly, the Supreme Court held that prosecutorial comments violate due process only when the prosecutor's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. DeChristoforo, 416 U.S. at 642-48. Under this test, it is not enough for Petitioner to show that the remarks were undesirable or even universally condemned. Id. at 642-43. Rather, the relevant question is whether the remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process. Darden v. Wainwright, 477 U.S. 168, 181 (1986). In assessing a claim of prosecutorial misconduct, the allegations are considered in the context of the entire trial:

> To view the prosecutor's statements in context, [the Court looks] first at the strength of the evidence against the defendant and decide[s] whether the prosecutor's statements plausibly "could have tipped the scales in favor of the prosecution." ... We also ascertain whether curative instructions by the trial judge, if given, might have mitigated the effect on the jury of the improper statements.... When a prosecutor responds to an attack made by defense counsel, we evaluate that response in light of the defense argument.... Ultimately, we "must consider the probable effect the prosecutor's [ statements] would have on the jury's ability to judge the evidence fairly."

Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994)(internal quotations and citations omitted). Because this issue was considered by the Oklahoma Court of Criminal Appeals on direct appeal, the deferential 28 U.S.C. § 2254 standard of review is applicable.

Petitioner argues that these comments were clearly prejudicial and constituted an attempt to present the jury with a distorted view of its role as trier of fact. Petitioner's Brief in Support, p. 19. The undersigned concludes that the argument set forth above did not present the jury with a distorted view of its role. Rather, when faced with a reluctant

15

victim, one who did not desire to see the father of her child go to jail, the prosecutor explained that the victim's ability to rationalize Petitioner's actions did not have to impact the jury's ability to find the Petitioner guilty.

Petitioner also complains that the prosecutor expressed a personal opinion that the Petitioner was guilty. The prosecutor did not state that she personally believed Petitioner was guilty nor did she express her personal opinion about the case. Rather, she argued that despite the victim's hesitation, the victim is not charged with deciding the Petitioner's fate. The prosecutor argued that the State had proven the elements of the charges against Petitioner and that he was indeed guilty, without any reference to her personal opinion and without any attempt to place the weight and authority of her government position behind her opinion. Additionally, the jury received instructions regarding the definition of evidence, that the State was required to prove the Petitioner's guilt beyond a reasonable doubt by presenting evidence, and they were instructed not to let sympathy or sentiment or prejudice enter into their deliberations. Tr. Vol. I, p. 235, 237; Jury Instruction Nos. 3, 10, 18, Original Record, p. 402, 409, 417. In combination with these instructions, the prosecutor's comments did not render Petitioner's trial fundamentally unfair. Accordingly, the undersigned recommends that the petition for habeas corpus be denied with regard to Ground Three.

### D. GROUNDS FOUR AND FIVE

In Grounds Four and Five, Petitioner argues that his sentences were excessive and that the trial judge erred in failing to exercise her discretion to run Petitioner's sentences concurrently. Following Petitioner's conviction on all five counts the jury recommended

that Petitioner be sentenced to forty-five years imprisonment on Count I, one year on Count II, twenty years imprisonment on Count III, thirty years imprisonment on Count IV, and twenty-five years imprisonment on Count V.  The trial judge exercised her discretion and ran all of the sentences consecutively, except the one year sentence on Count II, which was to run concurrently with the sentence imposed on Count I.

The Eighth Amendment prohibits sentences that are disproportionate to the crime committed.  Solem v. Helm, 463 U.S. 277, 284 (1983).  On habeas review, federal courts "afford wide discretion to the state trial court's sentencing decision, and challenges to that decision are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law." Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir.2000) (citations omitted).  Petitioner concedes that none of his sentences exceeds the statutory maximum for the offense.  Petitioner's Brief in Support, p. 22.  Accordingly, Petitioner cannot prevail on Ground Four of the petition.

Moreover, because Petitioner's Eighth Amendment argument is based solely on the collective nature of the sentences and the decision to run the sentences consecutively. his argument in Ground Five must fail.

> The Eighth Amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence for multiple crimes. See e.g. O'Neill v. Vermont, 144 U.S. 323, 331 (1892) ("If [the defendant] has subjected himself to a severe penalty, it is simply because he committed a great many such offences."); United States v. Schell, 692 F.2d 672, 675 (10th Cir. 1982) (twenty year sentence consecutive to current ninety-five year sentence not a violation of the Eighth Amendment).  Moreover, "[i]t is clear that the decision to run the sentences concurrently or consecutively is a matter within the trial court's discretion." Money v. State, 700 P.2d 204, 207 (Okla. Crim. App. 1985).

Hawkins v. Hargett, 200 F.3d 1279, 1285 n. 5 (10th Cir. 1999).  In light of the nature of Petitioner's challenge to his sentences, he has not demonstrated that the state court's disposition of his claim was contrary to, or an unreasonable application of, Supreme Court precedent, or that it was based on an unreasonable determination of the facts. Therefore, Petitioner is not entitled to federal habeas corpus relief as to Grounds Four and Five, and the undersigned recommends that the petition be denied in this regard.

### E.  GROUND SIX

In Ground Six, Petitioner argues that cumulative error requires reversal of his convictions.  Because the undersigned has concluded that none of the claims of error are meritorious or that any error was prejudicial, Petitioner is not entitled to federal habeas relief on the claim of cumulative error.  Moore v. Reynolds. 153 F.3d 1086, 1113 (10th Cir. 1998) ("Cumulative error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors").

### RECOMMENDATION

Based on the foregoing findings, it is recommended that the petition for a writ of habeas corpus be denied.  Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court on or before October 31, 2006, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  Petitioner is further advised that failure to file a timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal issues contained herein.  Moore v.

United States, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 11th** day of October, 2006.

_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE